IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERIN R. S.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 3:20-cv-00724-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Terin S. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in May 1985, plaintiff alleges disability beginning July 14, 2016,[2] due to fibromyalgia and associated mental impairments. Tr. 211, 230. Her application was denied initially and upon reconsideration. Tr. 138-46. On August 14, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 69-114. On April 12, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 53-63. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured of December 31, 2018. Tr. 55. At step two, the ALJ determined the following impairments were medically determinable and severe: fibromyalgia, obesity, depression, and anxiety. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 56.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except she can: "occasionally climb ramps, stairs, ladders, ropes, and scaffolds"; "occasionally stoop"; and perform "simple and routine tasks consistent with a General Educational Development reasoning level of two or less and unskilled work as defined by the Dictionary of Occupational Titles." Tr. 58.

---

[2] Plaintiff initially alleged disability beginning March 5, 2014, but subsequently amended her alleged onset date to July 14, 2016, to coincide with "when she first received treatment from her primary care physician, Dr. Kim Montee." Tr. 211, 224.

Page 2 – OPINION AND ORDER

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 61. At step five, the ALJ concluded, based in the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as product assembler, marker, and assembler of electrical accessories. Tr. 62.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to find her presumptively disabled at step three; (2) discrediting her subjective symptom statements; (3) neglecting to adequately weigh the third-party testimony of her boyfriend, Wesley O., and mother, Renae T.; (4) rejecting the medical opinions of Kim Montee, M.D., and counselor Richard Synowski; and (5) rendering an invalid step five finding.

**I.     Step Three Finding**

Plaintiff asserts that "her mental impairments, when considered in combination with her obesity and fibromyalgia, equal Listings 12.04, 12.06, and/or 14.09D." Pl.'s Opening Br. 14 (doc. 16). At step three, the ALJ assesses whether the claimant has an impairment or combination of medically determinable, severe impairments that meets or equals a listing. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). The claimant bears the burden of demonstrating that "all of the specified criteria [are met]." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

Further, a determination of medical equivalence must rest on objective medical evidence. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001); SSR 17-2p, available at 2017 WL 3928306, *3. In particular, "[m]edical equivalence must be based on medical findings" and "[a] generalized assertion of functional problems is not enough to establish disability at step three." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citation and internal quotations omitted); see also 20

C.F.R. § 404.1529(c)(2) ("[o]bjective medical evidence" is "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques").

The ALJ applied the special technique for evaluating mental impairments and determined that "[t]he severity of [plaintiff's conditions], considered singly or in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06" (which pertain to depressive/bipolar disorders and anxiety disorders, respectively). Tr. 56. In making this finding, the ALJ resolved that plaintiff was mildly impaired in interacting with others, adapting or managing oneself, and understanding, remembering, or applying information; and moderately impaired in concentrating, persisting, or maintaining pace. Tr. 57. The ALJ then discussed listings 12.04 and 12.06 in greater detail, each of which require, amongst other things, at least one extreme or two marked impairments in the aforementioned categories. Tr. 56-57. Although the ALJ did not specifically discuss listing 14.09D (which concerns inflammatory arthritis and also requires medical evidence of at least two marked disturbances), he did consider plaintiff's obesity "in combination with [her] other impairments but conclude[d] the impairments do not medically equal a listed impairment." Tr. 56.

Thus, plaintiff is correct to the extent she asserts the ALJ's discussion of the medical equivalence of her combined impairments, especially as it relates to her fibromyalgia, was terse. However, the Ninth Circuit has made clear that an ALJ's failure to make detailed findings at step three does not constitute reversible error provided the ALJ discusses the record in other portions of the decision. See, e.g., Kruchek v. Barnhart, 125 Fed.Appx. 825, 827 (9th Cir. 2005); see also Lewis, 236 F.3d at 512-13 (distinguishing Marcia to determine that the ALJ did not err at step three by "failing to elaborate on his determination that [the claimant's allegedly disabling physical

and mental impairments] did not meet or equal" a listing where the ALJ otherwise "discussed and evaluated evidence supporting his conclusion").

Moreover, plaintiff completely overlooks SSR 17-2p, which dictates that: (1) a finding of medical equivalence must be based on the opinion of an agency medical or psychological consultant (at the initial or reconsideration level) or a medical expert (at the hearing level); and (2) the ALJ need not articulate specific evidence supporting his or her finding that the claimant's impairments do not medically equal a listed impairment. SSR 17-2p, available at 2017 WL 3928306, *3-4; see also Nicole W. v. Comm'r Soc. Sec. Admin., 2020 WL 4805432, *3 (D. Or. Aug. 18, 2020) (applying SSR 17-2p to determine medical equivalency in regard to a June 2016 Title II application).

As plaintiff acknowledges in other portions in her briefing, the ALJ evaluated and weighed the medical and other evidence on which she relies in arguing presumptive disability at step three – namely, the opinions of Dr. Montee and Mr. Synowski. Tr. 59-61. Yet, for the reasons discussed herein, this evidence cannot reasonably be read as indicating at least one extreme or two marked impairments in interacting with others; adapting or managing oneself; understanding, remembering, or applying information; or concentrating, persisting, or maintaining pace. Plaintiff likewise does not point to sufficient evidence of medical equivalency under SSR 17-2p. The state agency medical and psychological consultants found no more than moderate limitations in the relevant categories and there is no medical expert testimony in the record before the Court. Tr. 116-23, 125-37. The sole opinion from a treating or examining acceptable medical source – i.e., that of Dr. Montee – does not address plaintiff's mental or combined impairments except in the most cursory of fashions. Tr. 401-03. Plaintiff therefore failed to carry her burden and the ALJ's step three finding is affirmed.

## II. Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her subjective symptom testimony concerning the extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she is unable to work due to the variability of her pain and mental symptoms. Tr. 92-93. Concerning the former, she explained: "I don't know when I'll actually have a day where I can't get out of bed." Tr. 94. Additionally, plaintiff reported an inability to sit for more than 30 minutes or stand for more than 20 minutes before needing to change position

or lie down. Tr. 100-01. In total, plaintiff estimated that she lies down "about three to four hours of [her] day." Tr. 101. Regarding the latter, plaintiff endorsed "difficulties remembering certain things," "difficult[y] concentrate[ing] 100% on things," and brain fog. Id. During fibromyalgia flare-ups, which occur approximately once per month and last for "24 hours to 2 weeks," plaintiff explained that her "mood [is] drastically" impacted" due to "too much pain." Tr. 94-95, 97-98. In terms of daily activities, plaintiff explained that she will infrequently cook or write a blog post if she is "feeling up to it," or crotchet for a short period of time until her hands start to hurt. Tr. 95. She also stated that she does chores in short intervals, takes care of her cat, and socializes online with her friend or boyfriend. Tr. 95-96.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 59. The ALJ cited to the lack of objective clinical findings related to fibromyalgia, as well as plaintiff's history of conservative treatment and inconsistent activities of daily living. Tr. 59-60.

Notably, the ALJ found that plaintiff's treatment for her physical and mental impairments "has been very conservative, largely over the counter and prescription medication." Tr. 60. The ALJ's conclusion is confounding given that other portions of his opinion acknowledge plaintiff's regular appointments with Dr. Montee for fibromyalgia symptom and medication management, as well as "multiple treatment modalities including physical therapy; trigger point injections; and nerve relaxers, as well as prescription pain medication." Tr. 59-61. In regard to mental health, the ALJ similarly recognized plaintiff's treatment "with therapy as well as multiple medications

including Pristiq, prazosin, hydroxyzine, nortriptyline, Elavil, lorazepam, and trazodone." Tr. 60-61. Given the nature of plaintiff's allegedly disabling impairments, it is difficult to imagine what additional treatment would have been available or appropriate. See Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) (ALJ erred in discounting the claimant's "testimony on account of the supposedly 'conservative' treatment she received," denoting the claimant had received injections and "a variety of [prescription] medications" for her fibromyalgia). This is especially true considering that plaintiff's treatment options were limited due to her insurance. See, e.g., Tr. 89, 336.

The ALJ also found that plaintiff's activities of daily living belied her subjective symptom testimony. Tr. 60. In support of this conclusion, the ALJ cited to evidence demonstrating that plaintiff could "perform adequate self-care, prepare simple meals, do household chores, and go out to the store," as well as engage in a number of pastimes including "photography, making jewelry, writing a book, crocheting, drawing, coloring, scrap booking, listening to music, playing video games, and attending a water aerobics class [once per] week." Id. An ALJ may discredit a claimant's testimony when he or she reports activities of daily living that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

As a preliminary matter, the Court notes the majority of evidence that the ALJ relied on is entirely consistent with plaintiff's hearing testimony and, as such, does not support a negative credibility finding. For instance, plaintiff's Adult Function Report and treatment records reflect that she is physically limited in her daily activities, engages in self-care and pastimes depending on her pain and energy levels, and experiences problems sitting and standing for prolonged periods. Tr. 12, 60, 265-72, 379, 405-09, 530-31.

The remainder of the evidence was mischaracterized by the ALJ and also fails to support a negative credibility finding. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). Significantly, while plaintiff reported the ability to complete some daily chores, she clarified that these tasks were completed in short intervals or with assistance. Tr. 267-68. Therefore, activities such as occasionally engaging in sedentary or low-impact hobbies and completing relatively limited chores – are neither transferable to a work setting nor contradict claims of a totally debilitating impairment. See Ellefson v. Colvin, 2016 WL 3769359, *3-4 (D. Or. July 14, 2016) (reversing the ALJ's finding regarding the claimant's daily activities under analogous circumstances).

Finally, the ALJ found that "the objective medical evidence does not support [plaintiff's] allegations of a disabling level of physical functioning." Tr. 26. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating objective evidence. This is especially true in cases concerning fibromyalgia and psychiatric conditions. See Revels, 874 F.3d at 662, 666 (fibromyalgia is a condition that involves chronic and at times debilitating pain that cannot be objectively measured, such that the ALJ errs by rejecting subjective complaints about fibromyalgia as "out of proportion to and not corroborated by the objective medical evidence"); Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (the extent of a psychiatric condition "will always depend in part on the

patient's self-report . . . unlike a broken arm, a mind cannot be x-rayed") (citation and internal quotations omitted).

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony. The ALJ's decision is reversed as to this issue.

**III.     Third-Party Testimony**

Plaintiff maintains the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to reject Wesley O. and Renae T.'s third-party statements. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

In September 2016, Wesley O. completed a Third-Party Adult Function Report. Tr. 257-64. He observed that plaintiff struggled with constant pain and fatigue and had "trouble doing anything requiring physical effort." Tr. 257, 262. Tr. 263-65. In terms of daily activities, he indicated that plaintiff takes care of her cat, watches television, plays video games, occasionally knits or socializes, showers when she is not in too much pain, and completes chores that require "very little effort." Tr. 258-59, 261.

In August 2018, Renae T. wrote a letter in support of plaintiff's disability claim. Tr. 305. She endorsed monthly fibromyalgia flare-ups that cause plaintiff "to be out of commission for a week at a time." Id. Renae T. also reported that plaintiff "has periods of time where she can't function well because of her depression, anxiety, and panic attacks." Id. Finally, she observed that

plaintiff frequently changes position "because of her pain" and needs to recline "periodically throughout the day." Id.

The ALJ considered the "multiple third-party statements" and assigned them "only some weight as they do no more than mirror [plaintiff's] complaints." Tr. 61. As addressed in Section I, the ALJ erred in evaluating plaintiff's subjective symptom testimony. By extension, the ALJ erred in rejecting Wesley O. and Renae T.'s statements. See Tina H. v. Comm'r Soc. Sec. Admin., 2021 WL 1550338, *3-4 (D. Or. Apr. 20, 2021) (ALJ's failure to account for third-party statements in the RFC was harmful to the extent the claimant's self-reports were also wrongfully discredited).

## IV. Medical Opinion Evidence

Plaintiff argues the ALJ improperly discredited the opinions of Dr. Montee and Mr. Synowski.

### A. Dr. Montee

At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors are accorded greater weight than those of examining doctors, and the opinions of examining doctors are entitled to greater weight than those of a non-examining doctors. Id. To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. Id.

In July 2016, plaintiff established care with Dr. Montee for treatment of her fibromyalgia, back pain, depression, and anxiety. Tr. 320-23. In June 2018, Dr. Montee prepared a "Medical

Opinion" in support of plaintiff's application for disability benefits. Tr. 401-03. In particular, Dr. Montee opined that plaintiff's fibromyalgia symptom variability and flare-ups, which occur at least once per month and can last for several days, would cause "extensive absences" and preclude even sedentary work on a regular and sustained basis. Tr. 402. She also stated plaintiff was:

> Not able to stand or walk up to 6 hours in an 8-hour day. [She] [c]ould go 15 minutes at a time 4 times in an 8-hour day. With a flare, [she] can only sit up to 30 minutes.

Tr. 401. Dr. Montee explained that plaintiff's symptom complaints – including difficulty standing, sitting, or walking for sustained periods; the need to change positions and recline periodically throughout the day; waxing and waning of symptoms; and significant mental health limitations – were "characteristic for fibromyalgia."[3] Tr. 401-02.

The ALJ afforded Dr. Montee's opinion "[l]ittle weight" because "the doctor has a short treatment relationship with [plaintiff] and the extreme limitations outlined are based on [her] subjective report of symptoms during a temporary fibromyalgia flare up and are not consistent with [her] reported activities of daily living." Tr. 60-61.

Concerning the first rationale, the ALJ mischaracterizes the record. Significantly, Dr. Montee had a fairly extensive (i.e., nearly two-year) treating relationship with plaintiff prior to rendering her opinion. In any event, "the presence of a limited treatment relationship cannot alone constitute a legitimate reason for rejecting a treating source's opinion." Daily v. Berryhill, 2018 WL 746397, *10 (E.D. Cal. Feb. 7, 2018) (collecting cases); see also Johnson v. Comm'r of Soc.

---

[3] In November 2019, Dr. Montee authored a letter addressing deficits in the ALJ's decision and "re-assert[ing]" her prior opinion that plaintiff would miss more than two days of work per month and had problems completing physical activities on a consistent, ongoing basis. Tr. 12. The Court has considered this letter, as it is part of the administrative record. To the extent it is offered retrospectively, the Court finds that does not materially differ from Dr. Montee's June 2018 opinion.

Sec., 2017 WL 4181084, *6 n.6 (E.D. Cal. Sept. 21, 2017) ("[a] treating relationship can be established [with a] medical source who has treated or evaluated [the claimant] only a few times") (citation and internal quotations omitted).

While, in certain contexts, an ALJ may permissibly reject a medical opinion based largely on a claimant's subjective complaints, this rationale does not apply to fibromyalgia. See Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms" and "there are no laboratory tests to confirm the diagnosis"); see also Revels, 874 F.3d at 663 (reversing the ALJ's rejection of a treating medical opinion because normal muscle strength, sensory functions, reflexes, or range of motion do "not rule out fibromyalgia-related symptoms" and limitations).

Turning to the ALJ's final rationale, inconsistency with the record is a proper basis to reject a medical provider's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, however, substantial evidence does not support the ALJ's decision. Dr. Montee is the only treating provider for plaintiff's physical symptoms and her chart notes are wholly consistent with her opinion. Specifically, plaintiff continued to report fibromyalgia flare-ups at least once per month, despite some symptom improvement with medication following the initiation of treatment. Tr. 337-38, 343-45, 377-78, 386. Further, while Dr. Montee described plaintiff as "doing well" at various points in regard to her depression, she repeatedly observed plaintiff to exhibit tenderness and fatigue upon examination. See, e.g., Tr. 365, 370, 373, 376, 380. Finally, her chart notes are replete with plaintiff's complaints of cyclical pain and associated insomnia and brain fog. Tr. 336, 364, 369, 373, 379, 386, 394.

Contrary to the ALJ's assertion, an independent review of the record reveals no contemporaneous medical evidence that contravenes Dr. Montee's report. In fact, plaintiff has

consistently reported that her physical activities were significantly limited by her fibromyalgia. The fact that plaintiff may be more capable of certain mental activities does not undermine Dr. Montee's opinion regarding her physical work-related limitations of function. In addition, the only other medical evidence concerning plaintiff's physical impairments – i.e., a physical therapy report from June 2018 and chronic pain evaluation from July 2017 – reflect problems with sitting, standing, diffuse body pain, and physical activities of daily living. Tr. 358-61, 420-22. The ALJ erred in evaluating Dr. Montee's opinion.

    **B.**    **Mr. Synowski**

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other medical sources" can be used to determine the severity of the impairment and how it affects the claimant's ability to work. SSR 06-03p, available at 2006 WL2329939. To reject the opinion of an "other medical source," the ALJ must provide a germane reason supported by substantial evidence. Lewis, 236 F.3d at 512.

Plaintiff initiated counseling with Mr. Synowski in September 2017. Tr. 405-10. In August 2018, Mr. Synowski completed a "Medical Source Statement" at the request of plaintiff's attorney, checking boxes indicating "Category III" and "Category IV" limitations – which correspond to being off-task 20% and 30% "of an 8-hour work day," respectively – in the following categories: remembering locations and work-like procedures; understanding, remembering, and carrying out very short and simple instructions; understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms and

performing at a consistent pace without an unreasonable number and length of rest periods; traveling to unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. Tr. 415-17.

The ALJ gave "little weight" to Mr. Synowski's opinion because it "is not consistent with his own treating notes" or "the overall medical evidence of record." Tr. 61. The ALJ also noted that "more recent evidence [shows] that while [plaintiff] experienced an exacerbation of her symptoms subsequent to her motor vehicle accident, within two weeks her symptoms had dissipated." Id.

As addressed herein, Dr. Montee is the only treating or examining acceptable medical source in the record and her chart notes do not contradict Mr. Synowski's opinion. While Dr. Montee's care was predominantly focused on plaintiff's physical symptoms, she did provide medication management for plaintiff's mental impairments and repeatedly denoted her self-reports of ongoing depression and anxiety, despite some mild improvement with medication or periodic remittance in symptom severity. See Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) ("[c]ycles of improvement and debilitating symptoms are a common occurrence [with mental health impairments], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working"); see also Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[t]he fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace") (citation and internal quotations and brackets omitted).

Although contradiction between a medical provider's opinion and his own treatment notes can constitute a legally sufficient reason to reject that opinion, here substantial evidence is lacking.

Ghanim, 763 F.3d at 1161. Mr. Synowski's own treatment notes, both preceding and succeeding plaintiff's February 2018 motor vehicle accident, consistently document significant depression and anxiety secondary to fibromyalgia pain. See Tr. 405-10 (plaintiff reporting low energy, racing thoughts, chronic fatigue, poor concentration and memory, crying spells, sadness, irritability, and excessive worry, "exacerbated by chronic pain due to fibromyalgia," during her initial assessment), 504-12 (plaintiff describing ongoing depression and anxiety between September and December 2017, but with some waxing and waning of symptoms); see also Tr. 481-91, 514 (despite experiencing a decrease in depression following an initial spike in symptoms following her motor vehicle accident, plaintiff continued to "struggle with depression and anxiety which appear to be exacerbated by her chronic pain"), 494 (plaintiff "continues [to be] seriously depressed" in October 2018), 526-32 (plaintiff reporting depressed mood, feelings of hopelessness, nervousness, difficulty sleeping, excessive worry, and trauma symptoms in December 2018).

Thus, the ALJ committed harmful legal error in weighing the medical opinion evidence, such that remand is warranted. See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

**V.      Step Five Finding**

Plaintiff asserts the ALJ's RFC and step five finding are erroneous because they do not adequately account for the limitations described in her testimony, the lay testimony, or the medical opinions of Dr. Montee and Mr. Synowski.

This argument is well-taken. As specified above, the ALJ wrongfully discounted this evidence and, by extension, failed to fully account for it in plaintiff's RFC. Accordingly, the ALJ erred in relying upon the VE's testimony at step five See Matthews v. Shalala, 10 F.3d 678, 681

(9th Cir. 1993) (if a VE's "hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value"). The ALJ's ultimate decision is therefore not supported by substantial evidence and remand is necessary.

**VI.     Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly weigh evidence from plaintiff, Wesley O., Renae T., Dr. Montee, and Mr. Synowski. The record is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling impairments. On one hand, it is undisputed that plaintiff's fibromyalgia and associated mental symptoms are chronic and have persisted in some form since plaintiff established care with Dr. Montee in July 2016. Even with medication and counseling, plaintiff continued to experience cyclical pain, fatigue, depression, and anxiety.

On the other hand, both Dr. Montee's and Mr. Synowski's chart notes suggest that plaintiff's physical impairments were her main barrier to employment. Dr. Montee's records especially indicate that plaintiff's depression and anxiety were often responsive to medication, and Mr. Synowski did not proffer any opinion as to the severity of plaintiff's mental impairments prior to September 2017 (i.e., more than one year after the alleged onset date). Tr. 417. Furthermore, while there is a dearth of evidence concerning the duration and extent of plaintiff's daily activities, the record intimates that plaintiff may not have been mentally impaired to the degree indicated by Mr. Synowski.

For instance, plaintiff attended college through 2016 and did not obtain her degree only because she lacked the resources to relocate to Portland to complete her final credits in-person. Tr. 104, 231, 384. Relatedly, plaintiff stopped working for reasons unrelated to her allegedly disabling conditions. Tr. 230. As such, during her initial assessment with Mr. Synowski in September 2017, plaintiff stated that she "plan[ned] to return to Portland when she gets social security and return to school there and live with her boyfriend." Tr. 405. The record also reflects that plaintiff's psychological symptoms were often conditioned upon or exacerbated by her living arrangement with her mother, such that plaintiff believed if she could achieve independence her symptoms would improve. Tr. 384, 506-08. Finally, Mr. Synowski's chart notes are often brief – i.e., comprised of approximately two sentences – and they do not reference any clinical or examination findings, such that the underlying bases of his extreme work-related limitations of function are unclear. See, e.g., 481-525.

As such, further proceedings are required to resolve this case. See Treichler, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the remote alleged onset date, coupled with

the complex and longstanding nature of plaintiff's physical and mental conditions, consultation with a medical expert would be helpful. Therefore, upon remand, the ALJ must consult a medical expert and, if necessary, reweigh the medical and other evidence of record (including Dr. Montee's November 2019 opinion), reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 3rd day of May, 2021.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge